IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICROSOFT MOBILE, INC. and MICROSOFT  )
MOBILE OY,                                  )
                                        )
          Plaintiffs,               )    CASE NO.:  1:15-cv-723-RGA
                                      )
      v.                              )
                                      )
INTERDIGITAL, INC.; INTERDIGITAL       )
COMMUNICATIONS, INC; INTERDIGITAL   )
TECHNOLOGY CORPORATION;          )    **JURY TRIAL DEMANDED**
INTERDIGITAL PATENT HOLDINGS, INC.;   )
INTERDIGITAL HOLDINGS, INC.; and IPR   )
LICENSING, INC.,                  )
                                      )
          Defendants.              )

## ANSWER AND COUNTERCLAIMS

Defendants and Counterclaimants InterDigital, Inc.; InterDigital Communications, Inc.; InterDigital Technology Corporation; and InterDigital Patent Holdings, Inc.; InterDigital Holdings, Inc. and IPR Licensing Inc. (collectively "InterDigital" or "Defendant") hereby answer the Complaint of Microsoft Mobile, Inc. and Microsoft Mobile Oy (collectively "Microsoft" or "Plaintiff") as follows:

## NATURE OF THE ACTION[1]

1.     Denied.

2.     Denied.

3.     Admitted that the ETSI IPR Policy contains a definition of "essential" that includes patents necessarily infringed by practicing a standard, and that patents meeting the ETSI

---

[1] Headings are reproduced for organizational structure only and are not adopted by Defendant.

definition of "essential" are referred to as "SEPs".   Admitted that Microsoft and its predecessors-in-interest infringe or have infringed certain of InterDigital's patents, and that InterDigital has submitted Information Disclosure and Licensing Declaration statements to ETSI that disclose patents that may be or may become essential to ETSI standards.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

    4.      Denied.

    5.      Admitted that InterDigital does not currently make or sell cellular handset devices, and that the majority of its revenue is derived from licensing patents related to cellular devices   Except as expressly admitted, InterDigital denies the allegations of this paragraph.

    6.      Denied.

    7.      InterDigital avers that referenced documents speak for themselves, and otherwise denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

    8.      Denied.

    9.      Admitted that Microsoft has filed a Complaint in this action seeking the referenced relief.  InterDigital denies that Microsoft is entitled to any relief, and otherwise denies all remaining allegations of this paragraph.

## **PARTIES**

    10.      InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

    11.      InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

    12.      InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

    13.      InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

ANSWER AND COUNTERCLAIMS

14.     Admitted.

15.     Admitted that InterDigital Communications, Inc. is a Delaware corporation. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

16.     Admitted that InterDigital Technology Corporation is a Delaware corporation. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

17.     Admitted.

18.     Admitted.

19.     Admitted that IPR Licensing, Inc. is a Delaware corporation.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

20.     Admitted that the referenced entities are wholly-owned, direct or indirect subsidiaries of InterDigital, Inc.   Except as expressly admitted, InterDigital denies the allegations of this paragraph.

## JURISDICTION AND VENUE

21.     Admitted that jurisdiction exists pursuant to at least 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.  Denied that jurisdiction exists pursuant to 28 U.S.C. §§ 2201-02.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted that venue is proper in this District, and denied as to the remainder of the allegations in this paragraph.

## STANDARD-SETTING AND PATENT HOLD-UP [Denied]

26.     Admitted that ETSI promulgates technical cellular standards in concert with 3GPP to promote interoperability.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

27.     Admitted that it is possible for there to be essential patents that are necessarily infringed by practice of a standard, as set forth in the definition of "ESSENTIAL" in the ETSI IPR Policy.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

28. Admitted that ETSI promulgates technical cellular standards in concert with 3GPP to promote interoperability; that standards often build on technology from prior generations; and that there is a definition of essential patents in the ETSI IPR Policy addressing IPRs that are necessarily infringed by compliance with a standard. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

29. Denied.

30. Admitted that certain activities involving the assertion of essential patents have been referred to by some commentators as "hold-up." Except as expressly admitted, InterDigital denies the allegations of this paragraph.

31. Admitted that many patent holders have disclosed patents that may be or may become essential to 3G and 4G standards. Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

32. Admitted that ETSI has adopted an IPR Policy, which IPR Policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

33. Admitted that ETSI has adopted an IPR Policy, which IPR Policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

34. Admitted that ETSI has adopted an IPR Policy, which IPR Policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

35. Admitted that ETSI has adopted an IPR Policy, which IPR Policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

36. Admitted that ETSI has adopted the ETSI Directives setting forth standard-setting procedures, which document speaks for itself. Except as expressly admitted, InterDigital denies

the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

37.     Admitted that ETSI has adopted an IPR Policy, which IPR Policy speaks for itself.  Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

## RELEVANT TECHNOLOGY MARKETS [Denied]

38.     Admitted that Microsoft purports to define one or more relevant technology markets in this paragraph, although InterDigital denies that Microsoft's purported definition is adequate or correct.  Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

39.     Admitted that InterDigital has submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

40.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

41.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

## INTERDIGITAL'S UNLAWFUL ACQUISITION OF MONOPOLY POWER [Denied]

42.     Admitted that InterDigital derives the majority of its revenue from patent licensing and that InterDigital entities have participated in standardization activities with respect to 3GPP standards through ETSI membership.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

43.     Denied.

44.     Admitted that InterDigital entities have participated in standardization activities with respect to 3GPP standards through ETSI membership and that InterDigital has submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak

ANSWER AND COUNTERCLAIMS

for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

47.     Admitted that technology discussions were conducted through TSG-RAN Working Group 1 ("Working Group").  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

48.     Admitted that the Working Group met in 2002 and 2003 to discuss proposals for the standard under consideration, that written proposals were distributed, and that Mr. Rudolf and/or Mr. Dick attended some meetings of the Working Group in 2002 and/or 2003.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

49.     Admitted that Motorola and Siemens made proposals within the Working Group. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

50.     Admitted that a U.S. patent application, on which Mr. Rudolf, Mr. Dick, and Phillip Pietraski were named inventors, ultimately issued as the '151 patent, and that InterDigital filed patent infringement actions on the '151 patent against Microsoft and others.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

51.     Denied.

## INTERDIGITAL'S MONOPOLY POWER IN THE RELEVANT TECHNOLOGY MARKETS [Denied]

52.     Denied.

53.     Denied.

54.     Denied.

## INTERDIGITAL'S ABUSE OF ITS MONOPOLY POWER [Denied]

55.     Denied.

**A.     InterDigital's Demands For Supra-Competitive Royalties and Terms. [Denied]**

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

**B.      InterDigital's Creation Of Additional Licensing Entities To Extract Higher And Discretionary Royalties. [Denied]**

62.     Admitted that InterDigital created, and transferred patents to, the Signal Trust for Wireless Innovation ("Signal Trust").  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

63.     InterDigital lacks information sufficient to form a belief as to the truth of the first sentence of this paragraph, and on that basis denies those allegations.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

64.     Admitted that InterDigital has previously entered into portfolio licenses with other handset device manufacturers.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

**C.      InterDigital's Required Secrecy To Hide Its Discriminatory Royalty Demands. [Denied]**

65.     Admitted that InterDigital has entered into non-disclosure agreements related to license agreements and related communications as is the general practice in the industry. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Admitted that InterDigital has entered into non-disclosure agreements related to license agreements and related communications as is the general practice in the industry. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

**D.      InterDigital's Strategy To Enforce Its Monopolistic Licensing Demands. [Denied]**

70.     Admitted that InterDigital initiated complaints in the International Trade Commission (ITC) against Nokia products in the 613 Investigation, 800 Investigation, and 868 Investigation and that the complaints involved patents or patent applications that were disclosed in Information Disclosure and Licensing Declaration statements to ETSI.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

71.     Denied.

72.     Denied.

73.     This paragraph consists of legal argument and no response is required.  To the extent a response is required, InterDigital denies the allegations of this paragraph.

74.     Denied.

75.     InterDigital avers that referenced documents speak for themselves, and otherwise denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

76.     Admitted that the District Court dismissed Nokia and Microsoft's improper declaratory judgment claims that purported to seek a declaratory judgment of "FRAND rates" for InterDigital's U.S. standards-essential patents and that InterDigital pursued ITC actions against Nokia and Microsoft, in which an Administrative Law Judge determined Microsoft's behavior to be that of an unwilling licensee.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

77.     Admitted that non-infringement determinations were made in the 613 Investigation and 868 Investigation.  Except as expressly admitted, InterDigital denies the allegations of this paragraph, and in particular denies all legal argument improperly included in this paragraph.

78.     Admitted that Nokia and Microsoft sent communications to InterDigital enclosing checks in the amounts stated shortly before the first day of ITC merits hearings in January 2013 and January 2014 that were conditioned on InterDigital's acceptance of unreasonable terms.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

ANSWER AND COUNTERCLAIMS

79.     Admitted that InterDigital reasonably refused to accept the payment offers of Nokia and Microsoft, which InterDigital avers were not offers made in good faith.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

**E.      Harm To Microsoft And To Competition In The Relevant Technology Markets. [Denied]**

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

<u>COUNT I</u>
**Monopolization in Violation of Section 2 of the Sherman Act [Denied]**

87.     InterDigital incorporates its responses to paragraphs 1-86 above.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

**<u>PRAYER FOR RELIEF</u>**

A.      Denied.

B.      Denied.

C.      Denied.

D.      Denied.

E.      Denied.

F.      Denied.

G.      Denied.

H.      Denied.

I.      Denied.

J.      Denied.

## ADDITIONAL DEFENSES

InterDigital hereby asserts the following defenses; however, it does not concede that it bears a burden of proof on them and reserves the right to assert additional defenses as warranted:

### FIRST DEFENSE

Plaintiff is not entitled to relief under the doctrine of unclean hands.

### SECOND DEFENSE

Plaintiff is not entitled to relief under the doctrine of waiver.

### THIRD DEFENSE

Plaintiff is not entitled to relief under the doctrine of estoppel.

### FOURTH DEFENSE

Plaintiff is not entitled to relief under the doctrine of laches.

### FIFTH DEFENSE

Plaintiff is not entitled to relief under the applicable statutes of limitations.

### SIXTH DEFENSE

Plaintiff is not entitled to relief due to competitive justification.

### SEVENTH DEFENSE

Plaintiff is not entitled to relief due to failure to mitigate damages.

### EIGHTH DEFENSE

Plaintiff is not entitled to relief under the doctrine of unjust enrichment.

### NINTH DEFENSE

Plaintiff is not entitled to relief under the doctrine of preemption.

### TENTH DEFENSE

Plaintiff is not entitled to relief due to lack of standing.

## ELEVENTH DEFENSE

Plaintiff is not entitled to relief due to the litigation privilege.

## TWELFTH DEFENSE

Plaintiff is not entitled to relief under the *Noerr-Pennington* doctrine.

## THIRTEENTH DEFENSE

Plaintiff is not entitled to relief due to a failure to state a claim.

## FOURTEENTH DEFENSE

Plaintiff is not entitled to relief due to breach of obligations to the ETSI standards-setting organization.

## FIFTEENTH DEFENSE

Plaintiff is not entitled to relief because it is an unwilling licensee and/or has engaged in reverse hold-up.

## SIXTEENTH DEFENSE

Plaintiff is not entitled to relief due to Defendants' entitlement to setoff.

## SEVENTEENTH DEFENSE

Plaintiff is not entitled to injunctive relief because any alleged injury is not immediate or irreparable, Plaintiff has an adequate remedy at law, and/or public policy concerns weigh against injunctive relief under these circumstances.

## EIGHTEENTH DEFENSE

Plaintiff is not entitled to relief under the doctrine of res judicata.

## NINETEENTH DEFENSE

Plaintiff is not entitled to relief under the doctrine of in pari delicto.

## TWENTIETH DEFENSE

Plaintiff is not entitled to relief to the extent the claims are duplicative of previously-asserted claims.

ANSWER AND COUNTERCLAIMS

## TWENTY-FIRST DEFENSE

Plaintiff is not entitled to relief because its claim conflicts with the First Amendment to the United States Constitution, the Patent Clause of the United States Constitution, and Title 35 of the United States Code.

## TWENTY-SECOND DEFENSE

Plaintiff is not entitled to relief because it fails to state a claim upon which relief can be granted.

## TWENTY-THIRD DEFENSE

Plaintiff is not entitled to relief because it failed to plead fraud with particularity.

## JURY DEMAND

InterDigital demands a jury trial on all claims so triable.

## NOTICE PURSUANT TO FED. R. CIV. P. 44.1

Defendant provides notice that its counterclaims raise an issue of foreign law under the laws of France.

## COUNTERCLAIMS

Counterclaimants InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, IPR Licensing, Inc., InterDigital Patent Holdings, Inc. and InterDigital Holdings, Inc. (collectively "InterDigital" or "Counterclaimant"), through their undersigned counsel, allege for their Counterclaims against Counterdefendants Microsoft Mobile, Inc. and Microsoft Mobile Oy (collectively "Microsoft" or "Counterdefendant") as follows:

## THE PARTIES

1.      Counterclaimant InterDigital, Inc. is organized under the laws of Pennsylvania. Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

2.      Counterclaimant InterDigital Communications, Inc. is a Delaware corporation. Its principal place of business is at 1001 E. Hector Street, Suite 300, Conshohocken, Pennsylvania 19428.

3.      Counterclaimant InterDigital Technology Corporation is a Delaware corporation. Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

4.      Counterclaimant InterDigital Patent Holdings, Inc. is a Delaware corporation. Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

5.      Counterclaimant InterDigital Holdings, Inc. is a Delaware corporation. Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

6.      Counterclaimant IPR Licensing, Inc. is a Delaware corporation.  Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

7.      On information and belief, Counterdefendant Microsoft Mobile Inc. ("MMI") is a Delaware corporation with a registered agent at 2711 Centerville Road, Suite 400, Wilmington, DE, 19808.

8.      On information and belief, Counterdefendant Microsoft Mobile Oy ("MMO") is a Finnish corporation having its principal place of business at Keilalahdentie 2-4, Espoo 02150, Finland.

9.      On information and belief, MMO and MMI are wholly-owned, indirect subsidiaries of Microsoft Corporation, a Washington corporation having its principal place of business at One Microsoft Way, Redmond, Washington.  MMO and MMI are engaged in the cellular device business, including the manufacture and/or sale of cellular telephones, tablets, and other devices.

10.      On information and belief, MMO was established in 2013 as an indirectly wholly-owned subsidiary of Microsoft Corporation in connection with Microsoft Corporation's acquisition of Nokia Inc. and the Devices and Services business of Nokia Corporation.  On information and belief, MMO and its subsidiary Nokia Inc. succeeded to all relevant assets, liabilities, and claims in relation to the acts alleged in these counterclaims as part of Microsoft Corporation's acquisition of Nokia Corporation's Devices and Services business. Nokia Corporation and Nokia Inc. are referred to herein collectively as "Nokia."

ANSWER AND COUNTERCLAIMS

11.    MMI is the successor corporation to Nokia Inc., which, on information and belief, was acquired from Nokia Corporation by MMO on April 25, 2014, as a wholly-owned subsidiary.  On information and belief, Nokia Inc. became a wholly-owned subsidiary of Microsoft Corporation in August 2014, and took its current name in May 2015.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

13.    Counterdefendants are subject to this Court's personal jurisdiction because they have availed themselves of the jurisdiction of this Court by filing the Complaint in this action; they regularly solicit and conduct business in this District; and have minimum contacts with this District.  In addition, this Court has personal jurisdiction over Counterdefendant MMI because, on information and belief, it is incorporated under the laws of Delaware.

14.    Venue is proper in this judicial district under 28 U. S. C. §§ 1391(b), (c), and (d) and because this Court has personal jurisdiction over the Counterdefendants by virtue of the fact that, *inter alia,* each Counterdefendant has purposefully availed itself of the rights and benefits of Delaware law, regularly does and solicits business in Delaware, has engaged in continuous and systematic contact with the State of Delaware, and derives substantial revenue from things used or consumed in the State of Delaware.

## STANDARD-SETTING AND REVERSE PATENT HOLD-UP

15.    Standard-setting organizations (SSOs) create technical standards for products that need to interoperate.  For example, in order for cellular phone handsets and base station equipment to be able to communicate with each other to complete calls, they must adhere to common technical standards.  Patents that are necessarily infringed by the practice of a standard are often referred to as "standards-essential patents," or SEPs, although each SSO will ordinarily have its own definition of "essential" with respect to standards promulgated by that organization. SSOs often ask members who own SEPs to undertake to be prepared to grant licenses under SEPs for standards-compliant products on fair, reasonable, and non-discriminatory (FRAND)

ANSWER AND COUNTERCLAIMS

terms and conditions.  Some SSOs also require members to make disclosures of specific intellectual property rights (IPRs) that may be essential (*i.e.*, IPRs that could potentially qualify as SEPs).  The FRAND commitment applicable to SEPs serves to provide a balance between the need to use technology for standardization (which provides benefits of interoperability and efficiency), and the rights of IPR owners (who have made substantial investments in the research and development required to develop the patented technology).  Manufacturers gain the ability to make interoperable products with the potential for widespread adoption among consumers, while IPR owners obtain fair and reasonable compensation for the use of their inventions.

16.     The technical standards at issue in this case were developed by the 3GPP consortium, in which companies participate through other SSOs referred to as organizational partners.  InterDigital participated in 3GPP through its membership in ETSI.  Accordingly, the ETSI IPR Policy governs the FRAND commitments applicable to the standards relevant to this case.

17.     The ETSI IPR Policy governs the conduct of ETSI members with respect to disclosure and licensing commitments concerning IPRs such as patents in the context of ETSI participation and membership.  The Policy is governed by the law of France.  *See* ETSI IPR Policy § 12.

18.     The ETSI IPR Policy expressly sets forth the Policy's goals.  Section 3.1 of the ETSI IPR Policy states that its objective is to adopt "solutions which best meet the technical objectives" of the telecommunications sector, and that "[i]n achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs."  ETSI IPR policy § 3.1.  It further expressly provides that "IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS."  ESTI IPR Policy § 3.2.  Accordingly, the ETSI IPR Policy is not solely concerned with making IPRs available to

manufacturers to ensure widespread dissemination of standards.  Rather, the Policy actually provides that the interests of patent owners are equally to be protected.

19.     In order to "reduce the risk" that patents are unavailable to those using the standard, but at the same time provide a mechanism for patent owners to be fairly and adequately compensated for the use of their IPR, ETSI IPR Policy § 3, ETSI may ask the owner of "Essential IPR" to provide an "undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ('FRAND') terms and conditions under such IPR . . . ."  ETSI IPR Policy § 6.1.

20.     The ETSI IPR Policy also includes a form that IPR owners shall use in making the FRAND undertaking, called the "ETSI IPR Information Statement and Licensing Declaration."  This undertaking sets forth the content of the actual FRAND undertaking made by the IPR owner.  ETSI IPR Policy, Appx. A.  This form demonstrates the difference in scope between the IPRs that are to be disclosed (those for which the owner has a "present belief" that they "may be or may become ESSENTIAL") and the IPRs as to which the owner declares it is prepared to grant licenses on FRAND terms and conditions ("[t]o the extent that the IPR(s) disclosed . . . are or become, and remain ESSENTIAL").   ETSI IPR Policy, Appx. A.  The form also provides that "the construction, validity, and performance of this IPR information statement and licensing declaration shall be governed by the laws of France."

21.     InterDigital's FRAND undertaking pursuant to the Information Disclosure and Licensing Statement was expressly made only "to the extent" that the disclosed IPRs "are, or become and remain, essential," as stated in the ETSI IPR Policy.

22.     There is no provision of the ETSI IPR Policy, or the undertaking in the Information Statement and Licensing Declaration, that prohibits patent owners from seeking or obtaining injunctions against patent infringers who refuse to take a license (indeed, the word "injunction" is not even mentioned).

23.     The ETSI Guide on IPRs, an official explanatory document, further makes clear that the details of licenses are matters for negotiation between individual companies:  "Specific

licensing terms and negotiations are commercial issues between the companies and shall not be addressed within ETSI."  ETSI Guide on IPRs § 4.1.  In addition, a series of "Frequently Asked Questions" (FAQ) that was published on the ETSI website emphasized that manufacturers are to obtain FRAND licenses through negotiation with the patent owner, stating that "the concerned firm has to enter into negotiation with the companies holding patents in order to obtain licenses for the use of the patented technology included in, and essential for the implementation of an ETSI STANDARD".

24.      In reliance on the understanding that the ETSI FRAND commitment includes as a fundamental goal that patent owners are to be adequately and fairly rewarded for the use of their inventions, InterDigital invested heavily in research and development toward technology relating to cellular standards.  In total, InterDigital has invested hundreds of millions of dollars in research and development relating to core wireless technology.  InterDigital has also participated in standards-setting activities with 3GPP and ETSI for cellular wireless standards.

25.      In reliance on the ETSI IPR Policy, InterDigital also submitted Information Disclosure and Licensing Declaration statements to ETSI, in which it identified IPRs that may be, or may become, essential to ETSI standards.  InterDigital's undertakings submitted to ETSI were made in good faith with no intention whatsoever not to fulfill them, and InterDigital has in fact fulfilled them *vis à vis* Microsoft and its predecessors-in-interest, as found by the ALJs in three ITC investigations.

26.      Manufacturers of products based on standardized technology that refuse to enter into licenses on FRAND terms and conditions engage in a practice known as "reverse hold-up," or "hold-out."  In a reverse hold-up situation, a manufacturer uses patented inventions without taking a license or paying compensation, thus holding hostage the patent holder's R&D expenditures and preventing any fair return on those expenditures.  The U.S. Department of Justice and USPTO have issued a policy paper recognizing the dangers of reverse hold-up, noting there may be situations where a manufacture of standardized products engages in an improper refusal to negotiate, and that such a refusal "could take the form of a constructive

ANSWER AND COUNTERCLAIMS

refusal to negotiate, such as by insisting on terms clearly outside the bounds of what could reasonably be considered to be F/RAND terms in an attempt to evade the putative licensee's obligation to fairly compensate the patent holder."

27.     Reverse hold-up injures patent owners, and further injures consumers and society by discouraging technology innovators from undertaking research and development for standardized technology.  Overall incentives for companies to participate in the pro-competitive activity of developing standards are drastically reduced when potential licensees engage in reverse hold-up.

## INTERDIGITAL'S GOOD FAITH PATENT ENFORCEMENT ACTIVITY AND COUNTERDEFENDANTS' REFUSAL TO LICENSE

28.     As contemplated by the ETSI IPR Policy, InterDigital has sought to negotiate licenses on FRAND terms and conditions with Nokia and its successor Microsoft for 3G and 4G-related patents over the past ten years.  Rather than take a license, Nokia responded aggressively by suing InterDigital in the District of Delaware (asserting purported claims under the Lanham Act) and in the United Kingdom (challenging certain of InterDigital's UK patents).   In light of Nokia's refusal to license, InterDigital pursued good faith enforcement of its patent rights by initiating complaints in the ITC in 2007 (the 613 Investigation), in 2011 (the 800 Investigation), and in 2013 (the 868 Investigation), along with parallel actions in the District of Delaware.  After Microsoft acquired the Nokia Device and Services business in 2014, Microsoft was added as a Respondent in the 868 and 613 Investigations, and as a defendant in the parallel District of Delaware action corresponding to the 868 Investigation.

29.     At all relevant times, InterDigital has held a good faith belief that its patent enforcement activities are meritorious, and has never asserted "sham" allegations that were objectively and subjectively baseless.  Indeed, in 2014, a jury returned a verdict against ZTE Corporation in the District of Delaware finding that three of InterDigital's 3G-related patents were infringed and not invalid.  Two of these same patents were asserted in the 613 ITC case against Nokia and Microsoft, which Counterdefendants now wrongly assert to have been "sham"

litigation.  InterDigital has always been motivated by a desire to be adequately and fairly compensated for use of its patents, which are presumed valid and as to which InterDigital has had a good faith belief of infringement.  As a company that derives the majority of its revenue from licensing, rather than from wireless device sales, InterDigital does not compete with Counterdefendants in a market for product sales, and consequently has no motivation or incentive whatsoever to competitively harm them.

30.     From 2006 to the present, InterDigital has sought to negotiate licenses for 3G and 4G-related patents with Nokia and its successor Microsoft.  During this decade-long time period, Counterdefendants have acted in bad faith by holding out from licensing, notwithstanding InterDigital's good faith efforts to negotiate a license on FRAND terms and conditions. Counterdefendants deliberately interposed delay in their negotiations with InterDigital, failed to respond substantively to InterDigital's license proposals, and took unreasonable positions that they knew would not lead to a license on FRAND terms and conditions.  To this day, Microsoft has not paid InterDigital any royalties at for a license to InterDigital's 3G and 4G-related patents. Instead, Microsoft and its predecessors-in-interest have been making and selling 3G and 4G compliant handset products for approximately a decade, including selling in the United States, without obtaining a license from InterDigital.

31.     In the 868 Investigation, ALJ Essex held that "[t]he evidence presented does not support the Respondents' position that InterDigital has violated a FRAND obligation by filing this complaint at the ITC."  *See In the Matter of Certain Wireless Devices With 3G and/or 4G Capabilities and Components Thereof*, Initial Determination, 2014 WL 2965327, at *81 (June 13, 2014).  Further, while respondents argued that "by having an exclusion order hanging over the negotiations, there is a risk of 'patent holdup': that is[,] the owner of the IPR may obtain remuneration beyond the value of the IP, because it is a standard," the ALJ found that"[t]here is no evidence that is the case here."  *Id*.  Instead, "[t]hese Respondents chose [to] take the actions that led to the allegation of infringement rather than follow ETSI policy for obtaining a license." *Id*. at *78.  ALJ Essex noted that respondents seek to use FRAND as a "sword to strike down

legal remedies and to hold their own duties at bay as long as possible." Finding that "[i]t is not in the public interest to support this," ALJ Essex found in favor of InterDigital on the FRAND issues. *Id*. at *112.

32.     The Administrative Law Judge in the 613 Remand Investigation found that Microsoft's conduct would be sufficient to demonstrate reverse hold-up against InterDigital, due to its refusals to negotiate a license with InterDigital on FRAND terms and conditions. ALJ Essex found that "[t]here is no evidence in the case that IDC was not attempting to negotiate in good faith, nor any evidence that they were refusing to work towards a FRAND license." *See In the Matter of Certain 3G Mobile Handsets and Components Thereof*, Inv. No. 337-TA-613, Initial Determination on Remand, 2015 WL 6561709, at *23 (Apr. 27, 2015). In addition, the ALJ found "there is no evidence of holdup" and that "[t]he obligation that InterDigital has taken has been fulfilled." *Id*. The ALJ also reviewed the evidence that Microsoft refused to negotiate for a FRAND license with InterDigital, and found that "[i]n failing to negotiate in a meaningful way, and refusing to take a license, [Microsoft] is currently an unwilling licensee." *Id*. at *26.

33.     Counterdefendants even publicly proclaimed their refusals to license by stating that, because they "owe InterDigital nothing," InterDigital has already been "fairly and adequately rewarded" with "exactly that amount." Counterdefendants also publicly stated that "InterDigital has asserted no patents that are actually essential to the relevant standard (*i.e.*, necessarily infringed by the standard and valid) and hence no claim to any royalties under any circumstances" -- while nevertheless filing the Complaint in this action purporting to allege that InterDigital possesses monopoly power based on its ownership of patents related to the relevant standards which allegedly create "high or insurmountable barriers to entry" in the asserted relevant markets. Counterdefendants have improperly used their hold-out leverage as part of a longstanding plan to undercompensate InterDigital for use of its patents, while preventing InterDigital from earning a fair return on its research and development expenditures.

## COUNTERCLAIM I

**(Declaratory Judgment that Microsoft's Sherman Act Claim Is Invalid or Preempted as Applied Under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution and Title 35 of the U.S. Code)**

34.    InterDigital restates and realleges the preceding allegations of its Counterclaims.

35.    Counterdefendants have asserted and currently assert that the Sherman Act may be applied against InterDigital's patent enforcement activity without any adequate pleading or proof that such conduct is objectively and subjectively baseless.

36.    The Complaint filed by Counterdefendants in this action contains a claim for violation of the Sherman Act that is based on InterDigital's patent enforcement activity.  Any allegations in the Complaint of other activity by InterDigital causing purported injury to Microsoft are irrelevant and/or false.

37.    There is an actual and immediate controversy between InterDigital and Counterdefendants on the issue of the applicability of the Sherman Act to InterDigital's patent enforcement activity.

38.    At all times, InterDigital's patent enforcement activities with respect to Counterdefendants and their predecessors-in-interest, including without limitation lawsuits, pre-lawsuit communications, and licensing demands, were undertaken in good faith and were not objectively and subjectively baseless.

39.    InterDigital has the right to pursue good faith patent enforcement activity under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution, and Title 35 of the U.S. Code, and accordingly is entitled to immunity from tort claims based on such activity.  Microsoft's Sherman Act claim impermissibly burdens InterDigital's Constitutional and statutory rights, and is therefore invalid or preempted as applied.

40.    InterDigital requests that the Court enter a declaratory judgment that Microsoft's Sherman Act claim is invalid or preempted as applied under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution, and Title 35 of the U.S. Code.

## COUNTERCLAIM II

**(Declaratory Judgment That Counterdefendants Waived Entitlement to Benefit From FRAND Commitments By InterDigital Due to Counterdefendants' Reverse Hold-Up)**

41.     InterDigital restates and realleges the preceding allegations of its Counterclaims.

42.     Counterdefendants assert in the Complaint as part of their Sherman Act claim that InterDigital deceptively made false FRAND commitments to ETSI that it never intended to fulfill, and then breached said FRAND commitments, including by refusing to enter into a license with Microsoft or its predecessors-in-interest on FRAND terms and conditions.

43.     ETSI FRAND commitments apply only to essential patents.

44.     Pursuant to ETSI's IPR Policy, the definition of ESSENTIAL is as follows: "'ESSENTIAL' as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD *without infringing that IPR*. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL."  ETSI IPR Policy, § 16 (emphasis added).

45.     With respect to each allegedly standards-essential patent on which Microsoft bases its Sherman Act claim, Microsoft waived any entitlement to benefit from FRAND commitments made by InterDigital during Microsoft's actual and constructive refusals to license, resulting in reverse hold-up against InterDigital.

46.     There is an actual and immediate controversy between Counterdefendants and InterDigital as to whether Counterdefendants waived the ability to benefit from ETSI FRAND commitments made by InterDigital in light of Counterdefendants' conduct during the time periods relevant to the Complaint.

47.     InterDigital is entitled to a declaratory judgment that Counterdefendants waived any entitlement to benefit from ETSI FRAND commitments made by InterDigital with respect to

ANSWER AND COUNTERCLAIMS

the patents on which Counterdefendants base their Sherman Act claim during Counterdefendants' actual and constructive refusals to license and their reverse hold-up.

## PRAYER FOR RELIEF

Wherefore, InterDigital respectfully requests that Plaintiff take nothing by its claim, and that the Court:

A.     Deny all relief and/or remedies requested by Plaintiff;

B.     Grant the relief requested in InterDigital's Counterclaims;

C.     Enter a declaratory judgment that Microsoft's Sherman Act claim based on patent enforcement activity is invalid or preempted as applied under the First Amendment to the U.S. Constitution, the Patent Clause of the U.S. Constitution, and Title 35 of the U.S. Code;

D.     Enter a declaratory judgment that Counterdefendants waived the ability to benefit from ETSI FRAND commitments made by InterDigital with respect to the individual patents on which Counterdefendants base their Sherman Act relevant market;

E.     Enter judgment in favor of InterDigital and against Plaintiff, assessing the costs of this action against Plaintiff;

F.     Award InterDigital such other and further relief as the Court may deem just and proper.

SMITH, KATZENSTEIN & JENKINS

*/s/ Eve H. Ormerod*
Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, Delaware 19899
Telephone:  (302) 504-1688
nbelgam@skjlaw.com
eormerod@skjlaw.com

Counsel for Defendants and Counterclaim Plaintiffs InterDigital, Inc. InterDigital Communications, Inc., InterDigital Technology Corporation, InterDigital Patent Holdings, Inc., InterDigital Holdings, Inc. and IPR Licensing, Inc.

OF COUNSEL:

WILSON SONSINI
GOODRICH & ROSATI
David S. Steuer
E-mail: dsteuer@wsgr.com
Michael B. Levin
E-mail: mlevin@wsgr.com
Maura L. Rees
E-mail: mrees@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300

WILSON SONSINI
GOODRICH & ROSATI
Jonathan M. Jacobson
E-mail: jjacobson@wsgr.com
Lucy Yen
Email: lyen@wsgr.com
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800


Dated:  May 27, 2016